UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| NADIA ALEXANDER, | Civil Action No.: 17-10925 |
| | Honorable Thomas L. Ludington |
| Plaintiff, | Magistrate Judge Elizabeth A. Stafford |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |
| _____/ | |

### REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 15, 18]

Plaintiff Nadia Alexander appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits (DIB) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence, and thus **RECOMMENDS** that:

- Alexander's motion [ECF No. 15] be **DENIED**;

- the Commissioner's motion [ECF No. 18] be **GRANTED**; and

- the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

## I. BACKGROUND

### A. Background and Disability Applications

Alexander was born on March 14, 1981, making her 32 years old on her alleged onset date of January 15, 2014. [ECF No. 11-5, Tr. 164]. She has completed schooling through the 7th grade and has prior work history as a fast food worker and assistant fast food manager. [ECF No. 11-2, Tr. 24; ECF No. 11-6, Tr. 191]. Alexander alleged disability due to a ruptured disc; severe pain in the neck, back, and arm; high blood pressure; and major depressive disorder. [ECF No. 11-6, Tr. 190].

After the Commissioner denied her disability application initially, Alexander requested a hearing, which took place in November 2015; she and a vocational expert (VE) testified. [ECF No. 11-2, Tr. 30-63]. In a November 25, 2015, written decision, the ALJ found Alexander to be not disabled. [*Id.*, Tr. 11-25]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Alexander timely filed for judicial review. [*Id.*, Tr. 1-3; ECF No. 1].

**B.    The ALJ's Application of the Disability Framework Analysis**

DIB is available for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity, and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c).

3

final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Alexander was not disabled. At the first step, he found that Alexander had not engaged in substantial gainful activity since her alleged onset date. [ECF No. 11-2, Tr. 13]. At the second step, the ALJ found that Alexander had the severe impairments of "degenerative disc disease of the lumbar spine and cervical spine, major depressive disorder, intention tremors, and obesity." [*Id.*]. Next, the ALJ concluded that none of her impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 14-16].

Between the third and fourth steps, the ALJ found that Alexander had the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a), except that:

> [She] is limited to simple, routine, repetitive work at an SVP of 1 or 2; occasional contact with supervisors, coworkers, and the public; avoid unprotected heights and operation of a motor vehicle; occasional climbing of ramps and stairs, balancing,

4

> stooping, kneeling, crouching, and crawling; no climbing of ladders, ropes, or scaffolds; can lift/carry 10 pounds frequently and 15 pounds occasionally; can stand/walk with normal breaks for a total of 2 hours in an 8-hour workday; can sit with normal breaks for a total of 6 hours in an 8-hour workday; and requires use of a cane for ambulation, but the contralateral upper extremity could be used to lift and carry up to the exertional limits.

[*Id.*, Tr. 16]. At the fourth step, the ALJ concluded that Alexander could not perform her past relevant work. [*Id.,* Tr. 24]. At the final step, after considering Alexander's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined that Alexander could perform work in the representative occupation of surveillance monitor, which exists in significant numbers in the national economy. [*Id.*, Tr. 24-25].

## II.   ANALYSIS

### A.

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the

evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Alexander argues that the ALJ failed to properly evaluate whether she met or equaled Listing 1.04, and that she does in fact meet and/or equal both 1.04A and 1.04C. [ECF No. 15, PageID 757]. The Court disagrees, finding that the ALJ's listing analysis regarding 1.04 was supported by substantial evidence.

## B.

Social Security regulations require that "the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight." SSR 96–6p, 1996 WL 374180, at *3 (July 2, 1996). Most courts in this district agree that a medical opinion on the issue of equivalency is necessary at the administrative hearing stage. *See, e.g., Fowler v. Comm'r of Soc. Sec.*, No. 12–12637, 2013 WL 5372883, at *4 (E.D. Mich. Sept. 25, 2013) ("[O]nce a hearing is requested, SSR 96–6p is applicable, and requires a medical opinion on the issue of equivalence."). But the lack of an opinion can be harmless error.

6

*See Bukowski v. Comm'r of Soc. Sec.*, No. 13-CV-12040, 2014 WL 4823861 (E.D. Mich. Sept. 26, 2014) (harmless error when "remand for further medical opinion would yield the same conclusions already reached by the ALJ."). Alexander bears the burden of showing that her impairments meet or equal a listing, and that any error on the part of the ALJ was not harmless. *Roby v. Comm'r of Soc. Sec.,* 48 F. App'x 532, 536 (6th Cir. 2002); *Willis v. Comm'r of Soc. Sec.*, No. 12-10011, 2013 WL 718506, at *5 (E.D. Mich. Feb. 27, 2013).

Here, Alexander correctly argues that "[n]o medical opinion is referenced to determine whether the listing is met and/or equaled." [ECF No. 15, PageID 758]. But the Commissioner's assertion that the ALJ did not "obtain" a medical opinion as to equivalence is inaccurate. [ECF No. 18, PageID 778]. State agency consultant Mary Jackson-Hammond, M.D., found that Alexander did not meet Listing 1.04 "due to effective ambulation and manipulation." [ECF No. 11-3, Tr. 72]. The ALJ gave Dr. Jackson-Hammond's RFC opinion little weight, [ECF No. 11-2, Tr. 22-23], but he did not cite the doctor's opinion when addressing whether Alexander's impairments met or equaled Listing 1.04. [*Id.*, Tr. 14].

While ample case law has addressed the error associated with an ALJ failing to obtain a medical opinion on equivalency, *see Fowler,* 2013

7

WL 5372883 at *4 (collecting cases), there is less guidance for when the required medical opinion is in the record, but not explicitly addressed by the ALJ during the listing analysis. One similar, but distinguishable opinion is *Hoffmeyer v. Comm'r of Soc. Sec.*, No. 14-11690, 2015 WL 12670493, at *5-*7 (E.D. Mich. Aug. 17, 2015), *adopted*, No. 14-11690, 2015 WL 6735337 (E.D. Mich. Nov. 4, 2015). In *Hoffmeyer*, the ALJ explicitly addressed the state agency doctor's opinion only when addressing the RFC. The plaintiff argued that the ALJ did not rely on the doctor's opinion for the listing analysis, but the court found that the ALJ satisfied the requirements of SSR 96–6p by assigning significant weight to the doctor's RFC assessment, and thus inherently accepting the finding that the claimant did not meet a listing. *Id.*

Here, the ALJ gave Dr. Jackson-Hammond's RFC opinion little weight, so *Hoffmeyer* is distinguishable. Still, the ALJ did reference Dr. Jackson-Hammond's opinion in his decision, so it can be assumed that the he considered it. *Boseley v. Comm'r of Soc. Sec. Admin.*, 397 F. App'x 195, 199 (6th Cir. 2010) ("Neither the ALJ nor the Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion."). And while SSR 96–6p required the ALJ to give the doctor's opinion "appropriate weight,"

1996 WL 374180 at *3, the regulation does not require the ALJ to give the opinion full weight in order to rely upon it for listing purposes.

Since the record includes a medical opinion on equivalence and the ALJ gave that opinion "appropriate weight," the controlling question is whether the ALJ's listing decision is supported by substantial evidence. The Court finds that it is, and that even if the ALJ did commit error, it would be harmless because Alexander's fails to meet her burden that her impairments meet or equal a listing.

## C.

The ALJ concluded at step three that Alexander "does not meet or medically equal listing 1.04 because she lacks the requisite motor and sensory deficits, and there is no evidence of spinal arachnoiditis or spinal stenosis resulting in pseudoclaudication (Exhibits 1F, 2F, and 6F)." [ECF No. 11-2, Tr. 14]. Alexander contends that this analysis is insufficient, rendering impossible the task of determining whether substantial evidence exists to support the ALJ's conclusion. In support, she cites *Christephore v. Comm'r of Soc. Sec.*, No. 11-13547, 2012 WL 2274328 (E.D. Mich. June 18, 2012). [ECF No. 15, PageID 759-60].

In *Christephore*, the ALJ erred by discussing only Listing 14.00, a category of listings classified as "Immune System Disorders," without

9

addressing the relevant listings, which were 14.00F and 14.08.  2012 WL 2274328, at *6.  The ALJ offered only a "conclusory, one-sentence statement that Plaintiff's symptoms do not meet or medically equal the criteria."  *Id.*  But here, the ALJ specifically referred to Listing 1.04, and mentioned which criteria of each subpart of 1.04 Alexander did not meet (motor and sensory deficits for 1.04A, spinal arachnoiditis for 1.04B, and spinal stenosis resulting in pseudoclaudiction for 1.04C).  [ECF No. 11-2, Tr. 14].

The ALJ's conclusions at step three are also supported by substantial evidence cited later in the opinion.  The ALJ is not required to include the same analysis in multiple parts of the decision or "arrange the decision in a particular manner" in order to satisfy the regulations.  *Gower v. Comm'r of Soc. Sec.*, No. 13-14511, 2015 WL 163830, at *28 (E.D. Mich. Jan. 13, 2015).  And the ALJ did not err in declining to name each subpart of Listing 1.04.  *See Luster v. Comm'r of Soc. Sec.*, No. 13-CV-14748, 2015 WL 1439910, at *7 (E.D. Mich. Mar. 27, 2015) (distinguishing *Christephore*).  Alexander's contention that the ALJ's analysis is facially insufficient falls short for these reasons.

Alexander's substantive arguments that her impairments meet and/or equal Listings 1.04A and 1.04C are without merit.  Listing 1.04A requires:

10

> Evidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A. In attempting to meet or equal Listing 1.04A, Alexander cites February 2014 MRI results indicating "a left paracentral disk protrusion at C4-C5, which is impinging on the left C5 nerve root." [ECF No. 11-7, Tr. 255]. She also cites hospital records showing limited range of motion; limited strength in the left upper extremity ("4+/5); diminished sensation in the left lower extremity; weakness in both upper extremities and lower extremities at 4/5 strength with left grip at 3/5; diminished sensation in the left upper extremity; decreased pinprick sensation in the left upper and lower extremities; decreased sensation in cranial nerve testing; and progressive weakness in the lower extremity, with low back pain playing a major role. [ECF No. 11-7, Tr. 253; ECF No. 11-8, Tr. 310-11; ECF No. 11-12, Tr. 488, 490]. Physical therapy records also indicated impairments of range of motion, muscle performance, balance, and gait in September 2014. [ECF No. 11-13, Tr. 545].

The Commissioner responds that Alexander has failed to present evidence of nerve root compression, as required under Listing 1.04A, and that several records indicate a lack of nerve root compression in both the

11

cervical and lumbar spine. For instance, the February 2014 MRI noted a small central disk protrusion at C6-C7 that resulted in no cord compression. [ECF No. 11-7, Tr. 253]. In September 2014, Rossitza Iordanova, M.D., noted "no evidence of cauda equine, epidural abscess or cord compression." [ECF No. 11-11, Tr. 411-13]. And a December 2014 MRI revealed findings that were the "same as before with very mild degenerative changes, but no neuroforaminal stenosis or nerve root compression." [ECF No. 11-14, Tr. 585, citing ECF No. 11-15, Tr. 675-76]. In addition, the ALJ cited several records showing full motor strength or normal motor activity, [ECF No. 11-2, Tr. 17-21, citing ECF No. 11-7, Tr. 258, 281; ECF No. 11-8, Tr. 295, 301; ECF No. 11-11, Tr. 416; ECF No. 11-12, Tr. 476; ECF No. 11-13, Tr. 517, 524, 537, 539; ECF No. 11-14, Tr. 592, 624, 627], and no sensory deficits, [*Id.*, citing ECF No. 11-11, Tr. 416, 419; ECF No. 11-12, Tr. 476; ECF No. 11-14, Tr. 592]. Though there was some evidence of motor and sensory loss, substantial evidence supported the ALJ's conclusion that Alexander lacked the requisite motor loss or sensory loss to meet Listing 1.04A. "If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human*

*Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations and internal quotation marks omitted).

Listing 1.04C requires the following:

Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. Alexander states that her numerous doctor visits, referrals to pain clinics, physical therapy, and visits to the ER "clearly show a manifestation of those medical findings in chronic pain and weakness, much of which is not stated to be neuro-anatomic in nature (while some is, which is why Plaintiff seeks consideration and believes she meets subparts A and/or C)." [ECF No. 15, PageID 762-63]. But Alexander fails to cite a single record of nonradicular pain. This alone renders her Listing 1.04C argument waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997). The Court has no obligation to scour the record on Alexander's behalf to develop her arguments. *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 754 (6th Cir. 2011).

Moreover, substantial evidence supports the ALJ's conclusion that Alexander lacked spinal stenosis resulting in pseudoclaudication. Though the record reflects "mild right foraminal stenosis without spinal canal

13

narrowing" at L4-L5 from Alexander's August 2014 MRI, [ECF No. 11-8, Tr. 326], the ALJ cited to a March 2014 MRI showed no stenosis, [ECF No. 11-2, Tr. 17, citing ECF No. 11-7, Tr. 266-67], and a December 2014 MRI reflected "[n]o marked canal or foraminal stenosis," [*Id.*, Tr. 18-19, citing ECF No. 11-14, Tr. 581]. Physician Mamie Wong-Lim, M.D., also found in March 2015 that two sets of MRI of the lumbar sacral spine "did not reveal any significant neuroforaminal stenosis or nerve root compression" and "no significant neurosurgical abnormality that needs to be corrected at this time." [ECF No. 11-14, Tr. 622].

Alexander's specific claim that she suffers from pseudoclaudication is especially wanting. She argues that pseudoclaudication is simply a symptom of spinal stenosis, and cites medical websites in support. [ECF No. 15, PageID 760]. She essentially invites the Court to evaluate the evidence in the record of impingement or inflammation of the nerves, and diagnose her with pseudoclaudication. [*Id.*]. The Court will decline that invitation. "[J]udges . . . must be careful not to succumb to the temptation to play doctor." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990).

Alexander's argument that she meets the "inability to ambulate effectively" requirement of Listing 1.04C also falls short.

> "Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very

14

seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00B2b. The ALJ notes that Alexander's testimony and some medical records support her need for a walker or a cane. [ECF No. 11-2, Tr. 16-18, citing ECF No. 11-7, Tr. 285; ECF No. 11-8, Tr. 311]. Those records reveal that Alexander's gait was slow and limited by back pain and that she used a walker. [*Id.*]. Alexander notes that her gait was also found to be slow and requiring assistance due to pain in another record from October 2014. [ECF No. 11-11, Tr. 431]. But the ALJ cited additional records conflicting with Alexander's subjective reports of needing a walker, including one from February 2014 when she ambulated without difficulty upon leaving the emergency room, and one from September 2014 when she claimed to need a walker, but was able to maintain a steady, balanced movement with short strides, albeit in a hunched position. [ECF No. 11-2, Tr. 23, citing ECF No. 11-7, Tr. 260 and ECF No. 11-11, Tr. 416-17]. At the latter occasion, Alexander was encouraged to limit her use of a walker or cane so as not to further weaken her spine muscles and contribute to further pain. [ECF No. 11-11, Tr. 416-17]. She was also found to have a normal gait at other emergency room

15

visits. [ECF No. 11-2, Tr. 17, citing ECF No. 11-7, Tr. 258 and ECF No. 11-12, Tr. 476].

The ALJ also found that Alexander's testimony of being able to sit for only four minutes at a time conflicted with her actual ability to sit through the 45 minute disability hearing. [ECF No. 11-2, Tr. 23]. While this does not reflect her ability to ambulate, it supports the ALJ's conclusion that Alexander "generally may not be entirely reliable." [*Id.*].

Though Alexander may use a walker at times, she has not shown that she is unable to ambulate without one, which is required to meet Listing 1.04C. Contrary to Alexander's contentions, the ALJ's listing analysis is not impossible to review and is supported by substantial evidence. The ALJ's decision should thus be affirmed.

### III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Alexander's motion for summary judgment be [ECF No. 15] be **DENIED**; that the Commissioner's motion [ECF No. 18] be **GRANTED**; and that the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD

Dated: April 24, 2018              United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to

Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 24, 2018.

s/Marlena Williams  
MARLENA WILLIAMS  
Case Manager
